NATHAN M. SPATZ (SBN 204769)
  nathan.spatz@pillsburylaw.com
JENNA W. LOGOLUSO (SBN 266685)
  jenna.logoluso@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:  213.488.7100
Facsimile:   213.629.1033

Attorneys for Plaintiff ECC International, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECC International, LLC, a Delaware limited liability company,<br><br>     Plaintiff,<br><br>     v.<br><br>KEB Hana Bank, a Korean foreign banking organization,<br><br>     Defendant. | Case No.  2:16-cv-6487<br><br>COMPLAINT FOR:<br><br>1. Breach of Contract<br>2. Declaratory Relief |

Plaintiff ECC International, LLC ("ECCI"), a Delaware limited liability company, alleges against KEB Hana Bank ("KEB"), a Korean foreign banking organization, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) in that diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper within this district pursuant to 28 U.S.C. § 1391 because ECCI is domiciled in California and the irrevocable Letter of Credit at issue in this case required performance in Los Angeles, California.

3. Additionally, the irrevocable Letter of Credit at issue in this action states that matters not addressed by International Standby Practices (ISP 98) International Chamber of Commerce (Publication No. 590), "shall be governed and construed in accordance with the laws of California."

## PARTIES

4. ECCI is, and at all times relevant hereto has been, a limited liability company duly organized and existing by virtue of the laws of Delaware, with its principal place of business in California, and is authorized to do business in the County of Los Angeles, State of California.

5. ECCI is informed and believes, and on that basis alleges, that Defendant KEB is, and at all times herein mentioned has been, a Korean foreign banking organization existing by virtue of the laws of Korea and doing business in Korea and Los Angeles. ECCI is informed and believes, and on that basis alleges, that Defendant KEB is the successor-in-interest to Korea Exchange Bank, formerly a Korean foreign banking organization existing by virtue of the laws of Korea.

6. ECCI is informed and believes and on that basis alleges that KEB is the entity which issued a certain irrevocable Letter of Credit, of which ECCI is the beneficiary.

# FACTS

7. ECC is a construction and remediation contractor, which provides design-build, construction, environmental remediation, engineering and design management, energy, munitions response, and international development services.  ECC projects include constructing state-of-the-art facilities for the U.S. Government, rebuilding war-torn regions, building capacity in underdeveloped nations, remediating the environment, and revitalizing communities after natural disasters.

8. In or around September 17, 2012, ECCI was awarded a government contract to complete certain construction projects on U.S. Army Garrison Humphreys ("Camp Humphreys") in Pyeongtaek, South Korea.  In or around September 27, 2013, ECCI was awarded a second government contract to complete additional construction projects at Camp Humphreys.

9. In order to complete the work associated with the government contracts, ECCI subcontracted with Daelim Industrial Co. Ltd. ("Daelim").  Daelim is an engineering and construction company based in Seoul, South Korea.

10. On or around November 28, 2012, ECCI and Daelim entered into a subcontract to perform work at Camp Humphreys, Agreement No. Daelim.SubK.5006.000.  The project involved construction on a two story structure and associated site improvements.

11. On or around November 25, 2013, ECCI and Daelim entered into a subcontract to perform work at Camp Humphreys, Agreement No. Daelim.subK.5010.000.  The project involved constructing an 81,698 square foot, Sensitive Compartmented Information Facility (SCIF) containing administrative offices, a data center, and a utility plant.

12. Daelim was required to obtain an irrevocable Letter of Credit, for which ECCI would be the beneficiary.

13. Pursuant to this requirement, Daelim obtained an irrevocable Letter of Credit (the "Irrevocable LOC") from KEB, No. 1050GPD13120015 (attached hereto as Exhibit 1), dated December 27, 2013.  The Irrevocable LOC states:

> WE, KOREA EXCHANGE BANK, SEOUL, KOREA, HEREBY ISSUED THIS *IRREVOCABLE* STAND-BY LETTER OF CREDIT (HEREINAFTER CALLED 'THE CREDIT') No. 1050GPD13120015 IN FAVOR OF ENVIRONMENTAL CHEMICAL CORPORATION INTERNATIONAL, . . . FOR ACCOUNT OF DAELIM INDUSTRIAL CO., LTD, . . . UPTO [sic] AN AGGREGATE AMOUNT OF EIGHT BILLION ONE HUNDRED FIFTEEN MILLION NINE HUNDRED THOUSAND KOREA WON ONLY AS A SECURITY COVERING PAYMENT AND PERFORMANCE BOND IN RELATION TO THE TERMS AND CONDITIONS OF THE CONTRACT NO. DAELIM SUBK. 5010.00 DATED 25 NOVEMBER, 2013 FOR YRP PN AO8Y101 PHASE 111 FACILITY MADE BY THE SUB-CONTRACTOR AND THE BENEFICIARY.

(Exhibit 1) (Emphasis Added).

14. The Irrevocable LOC further specifies that "ALL DOCUMENTS DISPATCHED TO KOREA EXCHANGE BANK, LOS ANGELES, CA, USA." (Exhibit 1).

15. Additionally, the Irrevocable LOC provides strict instructions on how to draw down the credit:

> THIS STAND-BY LETTER OF CREDIT IS PAYABLE AGAINST PRESENTATION OF YOUR DRAFT AT SIGHT DRAWN ON KOREA EXCHANGE BANK, (LOS ANGELES, CA, USA), ACCOMPANIED BY YOUR SIGNED STATEMENT STATING AS SET FORTH IN THE QUOTATION MARKS BELOW QUOTING OUR CREDIT NO. 0150GPD0131200015. 'WE ARE DEMANDING PAYMENT IN THE AMOUNT OF EIGHT BILLION ONE HUNDRED FIFTEEN MILLION NINE HUNDRED THOUSAND KOREA WON KOREA WON [sic] ONLY UNDER YOUR CREDIT NO. 0150GPD131200015 WE CERTIFY THAT THE SUB-CONTRACTOR HAS FAILED TO FULFILL ITS OBLIGATIONS UNDER THE CONTRACT NO. DAELIM.SUBK.5010.000.  WE ALSO CERTIFY THAT WE ARE IN STRICTLY [sic] COMPLIANCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT NO. DAELIM.SUBK.5010.000.'

(Exhibit 1).

16. Further, the Irrevocable LOC states that it "IS SUBJECT TO THE 'INTERNATIONAL STANDBY PRACTICES' (ISP 98) INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION No. 590). AND THE MATTERS NOT ADDRESSED BY THIS RULE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF CALIFORNIA." (Exhibit 1).

17. On September 23, 2015 the Irrevocable LOC was amended (the "Amendment") to extend the expiration date to October 31, 2016 and changed the bond amount to $4,000,000. The Amendment provides:

> WE HEREBY EXTEND EXPIRY DATE OF OUR STANDBY-L/C [Letter of Credit] TO OCTOBER 31ST, 2016 AND CHANGE BOND AMOUNT FROM KRW 8,115,900,00- TO USD 4,000,000.00-.
> ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Exhibit 2).

18. On or around June 16, 2016, during an overall building hydrostatic pressure test of the fire suppression sprinkler system installed by Daelim, the pipe system failed at the point of connection with the dielectric break that penetrates the perimeter wall, resulting in considerable water damage and flooding. Additionally, the pipe failure resulted in water free flowing into the uninterruptable power supply (UPS) / electrical room, which in turn caused significant damage to electrical equipment and architectural finishes within the area.

19. Damage associated with the wet pipe sprinkler line failure is integral to Daelim's overall mechanical systems work and, as such, is the responsibility of Daelim to remedy. ECCI notified Daelim that it would be responsible for all cost and time impacts associated with the water flooding event.

20. As of June 2016, ECCI's preliminary estimates to replace the damaged/impacted equipment (including all applicable security and management costs) were in the $4 million to $5 million range and it is estimated that the re-

-5-

procurement, installation, and repair work would require approximately six additional months to complete.

21. On or around August 12, 2016, ECCI presented the Los Angeles branch of KEB with the required documents to draw down the credit secured by the Irrevocable LOC: the Irrevocable LOC and Amendment, bank draft and demand letter. (*See* Exhibit 3). As required by the Irrevocable LOC and Amendment, the demand letter stated:

> WE ARE DEMANDING PAYMENT IN THE AMOUNT OF USD 4,000,000.00 ONLY UNDER YOUR CREDIT NO. 0150GPD131200015 WE CERTIFY THAT THE SUB-CONTRACTOR HAS FAILED TO FULFIL ITS OBLIGATIONS UNDER THE CONTRACT NO. DAELIM.SUBK.5010.000. WE ALSO CERTIFY THAT WE ARE IN STRICTLY [sic] COMPLIANCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT NO. DAELIM.SUBK.5010.000.

(Exhibit 3).

22. Pursuant to the terms of the Irrevocable LOC, all that was required for KEB's obligation to honor the Irrevocable LOC was presentation of the documents identified above and the above-referenced statement.

23. On or around August 24, 2016, KEB responded that it would not make payment as required under the Irrevocable LOC and Amendment, stating:

> WE ARE INFORMED BY OUR CUSTOMER [Daelim] THAT THEY HAD INITIATED AN INJUNCTION PROCEEDING REGARDING THE PAYMENT OF THE ABOVE LETTER OR CREDIT IN THE SEOUL DISTRICT COURT.
> ACCORDINGLY WE ARE OBLIGED TO AWAIT THE DECISION OF THE COURT ON THE SAID PROCEEDINGS.

(Exhibit 4).

24. KEB's refusal to make payment is in violation of the Irrevocable LOC, Amendment and Uniform Customs and Practice ("UCP") 600, which govern the operation of letters of credit, and California law.

-6-

Case No.                                                                                     Complaint
                                                                                    4847-9570-6935.v2

25. Under Article 4 of the UCP, an irrevocable letter of credit is considered a "separate transaction from the sale or other contract on which it may be based. Banks are in no way concerned with or bound by such contract, even if any reference whatsoever to it is included in the credit. Consequently, the undertaking of a bank to honour, to negotiate or to fulfil any other obligation under the credit is not subject to claims or defences by the applicant resulting from its relationships with the issuing bank or the beneficiary.  A beneficiary can in no case avail itself of the contractual relationships existing between banks or between the applicant and the issuing bank."

26. Further, under Article 7 of UCP 600:

> a. Provided that the stipulated documents are presented to the nominated bank or to the issuing bank and that they constitute a complying presentation, the issuing bank must honour if the credit is available by:
>
> > i. sight payment, deferred payment or acceptance with the issuing bank;
> >
> > ii. sight payment with a nominated bank and that nominated bank does not pay;
> >
> > iii. deferred payment with a nominated bank and that nominated bank does not incur its deferred payment undertaking or, having incurred its deferred payment undertaking, does not pay at maturity;
> >
> > iv. acceptance with a nominated bank and that nominated bank does not accept a draft drawn on it or, having accepted a draft drawn on it, does not pay at maturity;
> >
> > v. negotiation with a nominated bank and that nominated bank does not negotiate.
>
> b. ***An issuing bank is irrevocably bound to honour as of the time it issues the credit***.

(Emphasis Added).

27. In addition, pursuant to Article 10(b) of UCP 600, "[a]n issuing bank is *irrevocably* bound by an amendment as of the time it issues the amendment." (emphasis added).

28. And, pursuant to Article 15 of UCP 600, "when an issuing bank determines that a presentation is complying, it must honour."

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

29. ECCI incorporates by reference and re-alleges the facts contained in paragraphs 1 through 28, inclusive, as if fully set forth herein.

30. As fully set forth above, KEB issued the Irrevocable LOC for the benefit of ECCI on or around December 27, 2013.

31. On or around September 23, 2015, the Irrevocable LOC was amended and extended to October 31, 2016.

32. On or around August 12, 2016, ECCI provided appropriate notice to KEB that Daelim failed to fulfil its obligations under the subcontract and demanded full payment, in the amount of $4,000,000.00, under the Irrevocable LOC.

33. KEB refused to make payment under the terms of the Irrevocable LOC.

34. As a direct and proximate result of KEB's breach of contract, ECCI has been damaged in the amount of $4,000,000.00, excluding interest.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief)

35. Plaintiff incorporates by reference and re-alleges the facts contained in paragraphs 1 through 34, inclusive, as if fully set forth herein.

36. An actual controversy exists between ECCI and KEB regarding ECCI's right to receive payment under the terms of the Irrevocable LOC.

37. ECCI appropriately demanded payment under the Irrevocable LOC, of which it is the beneficiary, after Daelim failed to fulfil its obligations under its subcontract.

38. Although ECCI has demanded, and hereby demands, that KEB honor its obligations under the Irrevocable LOC and pay ECCI in the amount of $4,000,000.00, KEB has refused to do so.

39. A judicial declaration is necessary and appropriate at this time in order that the Irrevocable LOC is irrevocable and that KEB must honor its obligations thereunder, regardless of actions taken by Daelim to cancel, suspend or otherwise delay payment by KEB pursuant to the Irrevocable LOC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ECCI prays for judgment against KEB as follows:

A. Damages in the sum of $4,000,000.00, pursuant to the Irrevocable LOC;

B. Declaratory judgment from this Court that the Irrevocable LOC is irrevocable and that KEB must honor its obligations thereunder, regardless of actions taken by Daelim to cancel, suspend or otherwise delay payment by KEB pursuant to the Irrevocable LOC;

C. Interest;

D. Costs of suit incurred herein; and

E. Such other further relief as the Court may deem proper.

Dated:  August 29, 2016

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  */s/ Nathan M. Spatz*
NATHAN M. SPATZ
JENNA W. LOGOLUSO
Attorneys for Plaintiff ECC International, LLC